Wesley D. Felix (#6539)
PIA HOYT, LLC
170 S. Main Street, Suite 1100
Salt Lake City, Utah 84101
Tel: (801) 350-9000
wfelix@piahoyt.com

*Attorney for the Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROGER WILSON, an individual; RAYMOND BOMBEN, an individual; OWENA BOMBEN, an individual; JOHN BOSSHARD III, an individual; SOPHANARITH CHEA, an individual; SHERMAN FREEZE, an individual; SANDRA FREEZE, an individual; CASSANDRA FREEZE, an individual, LUCY A. GROETSCH, an individual; ROBERT MICHAEL SAYERS, an individual; and WILFRED SINDON, an individual, | **COMPLAINT**<br><br>**[JURY DEMAND]**<br><br><br>Case No. 2:24-cv-00624-DAK |
| Plaintiffs, | |
| vs. | |
| MILLCREEK COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; COLLIERS INTERNATIONAL, a business operating in Utah under a dba; EQUITY SUMMIT GROUP P.C., a Utah corporation; BRENT SMITH, an individual; KEVIN G. LONG, an individual; SPENCER TAYLOR, an individual; BLAKE MCDOUGAL, an individual; MARY STREET, an individual; ANDREW BELL, an individual; SCOTT RUTHERFORD, an individual; ADP-MILLCREEK 1, LLC, a Utah limited liability company and DOES 1-10, individuals or entities, | |
| Defendants. | |

Plaintiffs Roger Wilson; Raymond Bomben; Owena Bomben; John Bosshard III; Sophanarith Chea; Sherman Freeze; Sandra Freeze; Cassandra Freeze; Lucy A. Groetsch; Robert Michael Sayers; and Wilfred Sindon, by and through the undersigned counsel, hereby complain, state, and allege against Defendants Millcreek Commercial Properties, LLC; Millrock Investment Fund 1, LLC; Colliers International; Equity Summit Group P.C.; Brent Smith; Kevin G. Long; Spencer Taylor; Blake McDougal; Mary Street; Andrew Bell; Scott Rutherford; ADP-Millcreek 1, LLC, and Does 1-10 as follows:

## INTRODUCTION AND BACKGROUND

1.      Defendants conspired with one another and with other individuals to engage in a nation-wide scheme to defraud Plaintiffs and others by inducing them to invest in tenant-in-common ("TIC") interests in commercial properties bundled with sham long-term leases (the "Colliers/Millcreek Scheme").  The properties were sold at multiples of the actual value of the real estate to unsuspecting, often elderly individuals.   The inflated prices of the properties were concealed by ensuring significant returns to the investors through guaranteed long-term leases.  Defendants knew the lessors were shell entities with no substantive assets.  Defendants knew there was no economic basis for the lease terms and that there was no reason to believe that the lessor shell entities would be able to perform on the leases.  This information was hidden from purchasers.

2.      In addition, to support the fictitious leases, Defendants paid "rents" with investor money.  Without using investor money to pay "rents" to new investors, the Colliers/Millcreek Scheme would have immediately collapsed, and the fraud would have been revealed.

3.      Typically, leases were executed and guaranteed by shell entities known to the Defendants to be incapable of performing under the terms of the leases. In addition, Defendants falsely represented that the leases were supported by bonds, specifically including Lloyds of

London, which was meant to induce, and did cause reliance by the investors in the soundness of their investments.

4.      In this case, Plaintiffs purchased TIC interests in commercial properties from Defendants in the following locations: Keller, Texas; Crockett, Texas; Romeoville, Illinois; Naperville, Illinois; Bluffdale, Utah; Draper, Utah; Kennesaw, Georgia; and Pine Bluff, Arkansas from Defendants for $10,789,965.17.

5.      The purchase price was marketed as safe and reasonable based upon long term lease agreements with, amongst others, HealthCare Solutions Holdings Inc. ("HSH"), and guarantees that the investments would have returns between 6% and 9%.

6.      In fact, all of the properties were grossly inflated and worth significantly less than what was represented by Defendants.

## PARTIES

### Plaintiffs

7.      Plaintiff Roger Wilson is an individual residing in Salt Lake County, Utah.  At all relevant times, Roger Wilson was the principal of Wilson Real Estate Management, LLC, Wilson Real Estate IV, LLC, Wilson Real Estate V, LLC, Wilson Real Estate VII, LLC, and Wilson Real Estate VIII, LLC.  Together, these entities and Roger Wilson will be referred to singularly as "Wilson" or "Plaintiff Wilson".

8.      Plaintiffs Raymond and Owena Bomben are individuals residing in Northridge, California.  At all relevant times, Raymond and Owena Bomben were Trustees of The Raymond and Owena Jean Bomben Family Trust (the "Bomben Family Trust").  Together, Raymond Bomben, Owena Bomben and the Bomben Family Trust will be referred to singularly as "Bomben" or "Plaintiff Bomben".

9.    Plaintiff John Bosshard III is an individual residing in Salt Lake County, Utah. At all relevant times, John Bosshard III was the Trustee of the John Bosshard III Revocable Trust, dated March 16, 2016 ("Bosshard Trust"). Together, John Bosshard III and the Bosshard Trust will be referred to singularly as "Bosshard" or "Plaintiff Bosshard".

10.    Plaintiff Sophanarith Chea is an individual residing in Bakersfield, California. Hereafter, Sophanarith Chea will be referred to singularly as "Chea" or "Plaintiff Chea".

11.    Plaintiffs Sherman and Sandra Freeze are individuals residing in Salt Lake County, Utah. At all relevant times, Sherman and Sandra Freeze were Trustees of the Sherm G. Freeze and Sandra L. Freeze Trust (the "Freeze Trust"). Together, Sherman and Sandra Freeze and the Freeze Trust will be referred to as "Freeze" or "Plaintiff Freeze".

12.    Plaintiff Cassandra Freeze is an individual residing in Salt Lake County, Utah. At all relevant times, Cassandra Freeze was a Trustee of the J. Bradley Freeze and Cassandra G. Freeze Trust (the "Cassandra Freeze Trust"). Together, Cassandra Freeze and the Cassandra Freeze Trust will be referred to singularly as "Cassie Freeze" or "Plaintiff Cassie Freeze".

13.    Plaintiff Lucy A. Groetsch is an individual residing in Santa Rosa, California. At all relevant times Lucy A. Groetsch was a Trustee of the Lucy A. Groetsch Trust (the "Groetsch Trust"). Together, Lucy A. Groetsch and the Groetsch Trust will be referred to singularly as "Groetsch" or "Plaintiff Groetsch".

14.    Plaintiff Robert Michael Sayers is an individual residing in Santa Rosa, California. At all relevant times, Robert Michael Sayers was the Trustee of the Robert Michael Sayers 2003 Trust (the "Sayers Trust"). Together, Robert Michael Sayers and the Sayers Trust will be referred to singularly as "Sayers" or "Plaintiff Sayers".

15.    Plaintiff Wilford Sindon is an individual residing in McCall, Idaho. Hereafter, Wilford Sindon will be referred to singularly as "Sindon" or "Plaintiff Sindon".

16.     Together, Wilson, Bomben, Bosshard, Freeze, Cassie Freeze, Groetsch, and Sindon will be referred to as "Plaintiffs".

**Defendants**

17.     Defendant Millcreek Commercial Properties, LLC ("Millcreek") is a Utah limited liability company with its principal place of business in Salt Lake County, Utah.

18.     Defendant Millrock Investment Fund 1, LLC ("Millrock") is a Utah limited liability company.

19.     Defendant Colliers International ("Colliers") is an international real estate, valuation, consulting and investment services company that was at all relevant times registered to do business in the State of Utah.

20.     Colliers maintains four offices in Utah.  Colliers' acts that are the subject of this lawsuit were performed in close association with Millcreek Commercial Properties, LLC and directed towards transactions having a nexus in Utah.

21.     Defendant Kevin G. Long ("Long") is an individual residing in Utah.

22.     Long was the founder and principal of Millcreek.

23.     At all relevant times, Long was an employee and agent of Millcreek.

24.     At all relevant times, Long was the Principal Broker and COO of CBC Advisors, a real estate professional services and investment company acquired by Colliers in 2017.

25.     After Colliers' acquisition of CBC Advisors, Long worked as a broker for Colliers.

26.     Long founded Millcreek and affiliated commercial real-estate investment funds, including Millrock Investment Fund 1.

27.     Long is "President of Millcreek with Colliers."

28.     Defendant Spencer Taylor ("Taylor") is an individual residing in Utah.

29.     At all material times, Taylor was an employee and agent of Millcreek.

30.     Defendant Blake McDougal ("McDougal") is an individual residing in Utah.

31.     At all material times, McDougal was an employee and agent of Millcreek.

32.     At all material times, McDougal was an employee and agent of Colliers.

33.     Defendant Mary Street ("Street") is an individual residing in Utah.

34.     At all material times, Street has been involved with Millcreek and Colliers as a close business associate and principal actor in the management and operation of the Millcreek Properties described herein.

35.     At all material times, Street was employed at Colliers until 2023 and worked for them at all material times when the tenant-in-common ("TIC") interests discussed herein were beginning to be sold.

36.     Street allegedly manages upwards of 32 of the TIC interests on behalf of Millcreek and Colliers.

37.     Street is also a licensed real estate broker and continuing education instructor in Utah.

38.     Street has continued assisting Kevin Long in the management of the TIC interests through the present time.

39.     Defendant Andrew Bell ("Bell") is an individual residing in Utah.

40.     At all material times, Bell was an employee and agent of Millcreek.

41.     At all material times, Bell was an employee and agent of Colliers.

42.     Defendant Equity Summit Group P.C. ("Equity Summit") is a Utah professional corporation with its principal place of business in Pleasant Grove, Utah.

43.     Defendant Scott Rutherford ("Rutherford") is an individual residing in Utah.

44.     At all material times, Rutherford was an agent and representative of Millcreek, Equity Summit, and Elevated.

45.    Defendant Brent Smith ("Smith") is an individual residing in Utah.

46.    At all material times, Long, Rutherford, Bell, Taylor, Smith, and McDougal acted as close business associates of one another, including through joint marketing, communications, social media, and transactional commission payments.

47.    At all material times, Millcreek and Colliers acted as close business associates of one another, including through joint marketing, communications, social media, and transactional commission payments.

48.    Collectively, Millcreek, Millrock, Colliers, Long, Rutherford, Bell, Smith, Taylor, and McDougal are referred to herein as the "Millcreek/Colliers Parties."

49.    Defendant ADP-Millcreek 1, LLC ("ADP") was at all relevant times a Utah limited liability company, and on information and belief is an affiliated company of Millrock Investment Funds 1, LLC and the Millcreek/Colliers Parties.

50.    The Millcreek/Colliers Parties, ADP, Street, and the others identified above are referred to collectively as "Defendants."

## JURISDICTION AND VENUE

51.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 of the claims arising under federal law including 15 U.S.C. §78j(b), 15 U.S.C. §78t(a) and 15 U.S.C. §77l.

52.    The Court has supplemental jurisdiction over state law claims asserted pursuant to 28 U.S.C. §1367, because such claims are so related to the claims arising under the laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

53.    Venue is appropriate under 28 U.S.C. 1391(b)(2) and 15 U.S.C. 78aa.

54.    In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, used the means and instruments of interstate commerce, including mail, telephone, and internet communications.

## THE SCHEME

**Millcreek/Colliers TIC Program**

55.    Millcreek Commercial Properties, LLC ("Millcreek") actively markets tenant-in-common ("TIC') interests in commercial real estate as safe and secure investments offering a guaranteed source of long-term income.  Frequently, Millcreek pitched the TIC investments to potential buyers in need of a way to utilize the tax benefits of an exchange under IRS Section 1031.  Purchasers in a 1031 exchange are ideal marks for unscrupulous sellers as they are under strict time constraints when identifying and buying property.

56.    Millcreek was founded and is run by Kevin Long of Colliers International ("Colliers").  Long has acted in partnership with Colliers in marketing and selling TIC securities investments.  Millcreek marketed its properties over the internet, through mail and using other means of interstate communication.

57.    Over the last several years, Millcreek and its agents have conspired with third parties in a sophisticated scheme to fraudulently induce vulnerable, often elderly investors and those looking towards retirement to purchase TIC investments in commercial properties located throughout the United States at grossly inflated prices (the "Millcreek/Colliers TIC Program").

58.    Millcreek, along with its co-conspirators, would purchase commercial properties and then enter into long-term lease agreements at highly inflated prices.  Millcreek would then market the properties to potential investors with long-term leases representing that the leases provided a safe and secure source of passive income.

59.    The lease terms were in fact so extravagant that it was clear to Defendants from the outset that the lease terms could not be met.  To hide the scheme, Defendants would pay rents to the investors from invested money, thereby postponing the collapse of the scheme while Millcreek continued to defraud new investors.

60.    Millcreek stated that investors could "[r]est assured that our portfolio is rock solid. We vigorously vet very property that we offer."  They represented that they sold only properties with tenants who can "thrive in any economic environment."  In fact, the leases were often with shell entities that did not have real assets or the ability to pay the inflated rents.

61.    Millcreek marketed TIC investments in real properties at multiple locations, including Naperville, Illinois; Romeoville, Illinois; Pine Bluff, Arkansas; Kennesaw, Georgia; Draper, Utah; Bluffdale, Utah; Keller, Texas; and Crockett, Texas (collectively the "Millcreek Properties").

62.    Millcreek's affiliate, Millrock Investment Fund 1, which is also managed and operated by Kevin Long, contracted with developers to make renovations, improvements, and perform construction on the Millcreek Properties.

63.    The Millcreek/Colliers Parties represented that they had already secured for each of the Millcreek Properties, a paying tenant with sufficient revenue to service their long-term lease. These purported tenants included Surgical Ambulator Regional Center ("SARC"), Advance Care Medical, Inc., and other entities that were related to Healthcare Solutions Holdings Inc. ("HSH").

64.    HSH is a Delaware corporation with its principal place of business in Glen Cove, New York.  HSH is a wholly owned subsidiary of Health Care Solutions Management Group, Inc. ("HSMG").  HSH was represented by the Millcreek/Colliers Parties as being a "dream tenant" working with Millcreek.  Millcreek and its co-conspirators represented that HSH was a financially sound company focused on providing clinicians with "state of the art diagnostic and therapeutic

tools."  Millcreek represented that HSH "will capture revenue and margins that have historically been lost [capturing] significantly enhanced operating margins."  In fact, HSH was a shell company without any substantive operations or assets.

65.    HSMG was forced into involuntary bankruptcy in September of 2023, Delaware Bankruptcy Court, Case No. 1:23-bk-11458.

66.    Joshua Constantin, the Head of Commercial Real Estate for HSH, was "indefinitely barred by the United States Securities and Exchange Commission from acting as a broker or investment advisor, or from associating with any broker, dealer, investment advisor, municipal securities dealer, municipal advisor, or transfer agent" in Case No. 1:11-cv-04642 in the United States District Court for the Southern District of New York.

67.     While not named as defendants in this lawsuit, collectively, HSH, HSMG, and Joshua Constantin are referred to herein as the "HSH Parties."

68.    The Millcreek/Colliers Parties represented that the rent payments on the lease were backed by two failsafe mechanisms to protect investors from potential losses.  The first of these was a corporate guarantee backing the lease. The corporate guarantor for HSH was HSMG.

69.    The second of these was represented by Millcreek to be a bond issued by Lloyd's of London, the world's leading insurance/reinsurance market, when in reality they were not bonded by Lloyd's of London.

**The Millcreek/Colliers Parties Jointly Target Retirement Investors**

70.    Long was the Senior Vice President of the Utah division of Colliers, as shown in this email signature from communications with Plaintiff below:




71.    From 2013 to 2016, Long was the Principal Broker and COO of CBC Advisors, a real estate company:





72.    In 2017, Long founded Millcreek, and affiliated commercial real estate funds, including Millrock Investment Fund 1 of Utah ("Millrock").

73.    Long was "President of Millcreek with Colliers," as shown in this excerpt from his personal LinkedIn page:



74.    Long represented that Millcreek and Colliers worked in partnership with each other, as shown in this excerpt from the Millcreek/Colliers website:

> In his previous position, Scott was the Executive Vice President of Sales and Marketing for the largest provider of Real Estate partial ownership projects in the United States. Through his efforts, he developed an impeccable reputation and a nationwide client base. The alliance between the Rutherfords and Millcreek Commercial will enable Millcreek to become the preeminent provider of tenant-in-common real estate in the US. Millcreek Commercial utilizes Colliers International as their brokerage partner and Old Republic Title to ensure the chain of title on every transaction. These two global partners provide Millcreek Commercial with an unsurpassed national platform.

75.    At all material times, Defendants Long, Rutherford, Bell, Taylor, Smith, and McDougal, and other agents of Millcreek and Colliers were close business associates, including through joint marketing, communications, social media, and transactional commission payments.

76.    In or about 2020, Millcreek Commercial and its agents Rutherford, Bell, Taylor, Smith, and McDougal, under Long's leadership, began marketing and selling TIC interests in the Millcreek Properties.

77.    Long, Rutherford, Bell, Taylor, Smith, and McDougal, are not registered with FINRA (the Financial Industry Regulatory Authority) to sell securities.

78.    The TIC interests sold by Millcreek/Colliers in the Millcreek Properties were not registered as securities by filing a registration statement, nor were they exempt under the 1933 Securities Act.

79.    The Millcreek/Colliers Parties marketed TIC interests to potential buyers who wished to take advantage of the IRS Section 1031 exchange program.

80.    A 1031 exchange permits those who sell business or investment property to postpone paying tax on the gain if the funds are reinvested in a "like-kind exchange"- i.e., property of the same nature or character as the sold property.

81.    1031 exchanges must take place over a constrained time frame by law.

82.    The new property must be purchased within 180 days from the date the original property is sold.

83.    Millcreek "markets to middle-class retirement investors," as shown in this excerpt from the Frequently Asked Questions page of Millcreek's website:

**What is the exit strategy?**

Each co-owner has a separate deeded interest in the property and can buy and sell their interests as real estate independent of other owners. Every NNN leased investment, whether purchased as a Tenant In Common or as the sole owner, should be purchased as part of a long term investment strategy. But, as Robert Burns wrote, even "the best laid plans... can go awry". Because Millcreek Commercial Properties keeps minimums low and markets to middle class retirement investors we anticipate securing multiple retirement account investors in our properties. These investors have been coached to utilize a roll-up strategy whereby they leave their cash in their retirement account and compound their investment when additional shares of their investment property become available. There are no minimums on exchanges within a property.

Millcreek will facilitate these deed modifications and charge no marketing fees. If after your shares are offered to your partners and you still have a portion of your investment left to sell on the open market. Millcreel will market your property on our sales platform for a discounted listing fee of 3%. We are committed to maintaining the best resale program in the industry.

84.    The tax-deferral advantages of a 1031 exchange appeal to retirees, particularly when such an exchange promises large monthly returns on which they could rely during their final years.

85.    Millcreek marketed that "Millcreek Commercial generates passive income for you."

86.    The Millcreek/Colliers Parties typically bundled long-term, triple net leases with the sale of TIC interests; these triple net leases were likely more closely related to absolute net leases rather than an actual triple net lease.

87.    Rutherford, Long and Millcreek/Colliers represented that the owners of the TIC interests would not be responsible for any management fees or other expenses related to the property and the tenant; however, the owners have had to pay a 2% management fee for the upkeep of the property that the tenant should have paid.

88.    Millcreek/Colliers offered TIC interests in properties that already had leases in place with tenants.

89.    The lease connected with each TIC property was designed to be the income stream for the Millcreek/Colliers Parties' targeted investors.

90.    Millcreek marketed their properties to "leave the headaches of being a landlord behind."

**The Millcreek/Colliers TIC Program Sales Pitch**

91.    Plaintiffs were told that "[i]n terms of commercial real estate, a 'bad investment' could equal a property that goes under, an unreliable tenant, or a property that requires extensive responsibility on the part of the investor. Millcreek brings experience to the table by identifying and purchasing profitable properties that will benefit the portfolios of investors", as shown in this excerpt from Millcreek's website:

> Choosing a bad investment
>
> Another fear in the commercial real estate investment world may include choosing a bad investment. In terms of commercial real estate, a "bad investment" could equal a property that goes under, an unreliable tenant, or a property that requires extensive responsibility on part of the investor. Millcreek Commercial brings experience to the table by identifying and purchasing profitable properties that will benefit the portfolios of investors. One key way that Millcreek Commercial avoids a "bad investment" from the beginning is through purchasing properties with "recession resilience", or in other words, properties that have tenants who thrive in any economic environment.  The types of properties included in Millcreek Commercial's portfolio include pharmacies, convenience stores, and medical centers.

92.    Plaintiffs were told that with every property, investors could "enjoy a quality property that has been identified and vetted by seasoned professionals", as stated in this excerpt from the Millcreek website:

> After identifying the property, Millcreek will ensure that the property meets three of four requirements: single tenant, long-term lease, investment grade, and triple-net leased. In addition, Millcreek Commercial will travel to the property for a personalized inspection of the property, building, and the surrounding area. Millcreek Commercial's years of experience in identifying profitable properties allows investors to avoid having to fear getting stuck with a "bad investment". Their expertise can help investors enjoy a quality property that has been identified and vetted by seasoned professionals.

93.    The leases represented by the lease agreement appeared more closely related to an absolute net lease, which includes capital improvements to the property with everything included in a triple net lease.

94.    Millcreek stated that "Millcreek Commercial ensures that any commercial property has a corporate guarantee to protect investors. Investors with Millcreek Commercial properties can rest assured that they will not lose money, rather benefit from a steady stream of passive income," as shown in this excerpt from an article from Millcreek Commercial titled "Investing Isn't Scary":

> Millcreek Commercial ensures that any commercial property has a corporate guarantee to protect investors. Investors with Millcreek Commercial properties can rest assured that they will not lose money, rather benefit from a steady stream of passive income.

95.    Accordingly, the Millcreek/Colliers Parties stated the lease was "backed by strength" by HSMG, the guarantor on the lease and a member of the HSH Parties.

96.    Millcreek represented that HSMG working "in cooperation' with Millcreek" was developing a nationwide network of surgery centers.

97.    The Millcreek/Colliers Parties represented that the prestigious Lloyd's of London insurance entity insured the lease.

98.     The Millcreek/Colliers Parties told Plaintiff that they could rest assured that the investment would be "safe, stable, [and] secure," as shown in this excerpt from marketing materials provided by Millcreek:

**Invest with Us**

At Millcreek Commercial, we take the benefits of investing in commercial real estate to the next level. Our "all-gain, no-pain model" produces monthly passive income, requires zero heavy-lifting, and tax-protects our co-owners.

Invest with us today and access premium commercial real estate that is a safe, secure, and stable place to put your hard-earned dollars to work.

99.     The Millcreek/Colliers Parties represented that "every Millcreek Commercial transaction is treated with the same care and attention to detail that would occur in a typical $10 million commercial investment real estate transaction", as per this excerpt from Millcreek's Frequently Asked Questions page on their website:

**How is a purchase executed?**

Every Millcreek Commercial transaction is treated with the same care and attention to detail that would occur in a typical $10 million commercial investment real estate transaction. After you have reviewed the Offering

100.     Millcreek Commercial stated that "[o]ur acquisition team only purchases properties that our principals want to hold in our portfolios," as shown in this excerpt from an article on Millcreek's website titled "7 Reasons to Consider Millcreek Commercial":

**4. Philosophy and Core Values**

Our acquisition team only purchases properties that our principals want to hold in our portfolios. We purchase these properties debt free and then invite others to join us as Tenant In Common owners. Every property must pass the relative test – we would sell this to our mother, grandmother, best friend or son.

101.     Millcreek stated that "we typically stay in our deals for the long term […] This commitment provides our partners with the added assurance that we believe in and are committed to our products", as shown in this excerpt from an article on Millcreek's website titled "7 Reasons to Consider Millcreek Commercial":

**5. Long Term Partners**

Millcreek Commercial typically stays in our deals for the long term. There are situations where we could sell all of a syndication, but our business model is for one of our partners or family member to stay in a deal for the long term. This commitment provides our partners added assurance that we believe in and are committed to our products.

102.    The Millcreek/Colliers Parties represented that they had done many such deals before.

103.    The Millcreek/Colliers Parties told Plaintiff that Millcreek "utilizes Colliers International as [its] brokerage partner."

104.    The Millcreek/Colliers Parties represented to the Plaintiff that the Millcreek/Colliers partnership extended internationally because Colliers was Millcreek's "global partner", as shown in this excerpt from an article on Millcreek's website titled "7 Reasons to Consider Millcreek Commercial":

**2. A National Platform**

Millcreek Commercial utilizes Colliers International as their brokerage partner and Old Republic Title to ensure the chain of title on every transaction. These two global partners along with Kevin's expansive network, provide Millcreek Commercial with an unsurpassed national platform.

105.    The Millcreek/Colliers TIC Program's representatives communicated with Plaintiff using their official Colliers email addresses.

106.    Colliers' logo was prominently placed right next to Millcreek's logo on the pages of the properties it listed.

107.    Colliers' logo was also prominently displayed on emails and marketing materials used by Long and other Millcreek Commercial agents.

108.    For instance, below is the front page of the Millcreek/Colliers' parties Offering Memorandum for TIC investments in the Naperville Property:

17



109. Below is the heading of the second page of the Offering Memorandum for the Naperville Property, again prominently featuring the logos of both Millcreek and its partner, Colliers:



110.    On the front page of the Offering Memorandum, Millcreek, and Colliers further

state:

> The Tenant in Common (TIC) interests sold by Millcreek Commercial Properties constitute interests in real property. They do not constitute securities. Consequently, federal and state laws regulating the sale of securities do not apply with respect to the sale of TIC interests, and purchases of TIC interests will not be entitled to the protection afforded to purchasers of securities under federal and state securities laws. Nothing in the attached offering documents should be construed as an offer or a solicitation of an offer to buy or sell securities.

111.    This was the same for all of the Millcreek Properties that are the subject of this suit.

### BACKGROUND OF DEFENDANTS' PREVIOUS SCHEMES, FRAUDS, AND INVESTIGATIONS

112.    Although Plaintiffs did not know it at the time, Plaintiffs have since discovered that many Defendants and several of the Advisors have previously been involved in similar TIC investment schemes, fraudulent activity, and SEC investigations.

113.    Scott Rutherford was identified as a member of a principal party that operated a similar TIC investment scheme in Case No. 2:19-cv-277 in the United States District Court for the District of Utah, and he was named as an individual defendant in another fraud case alleging a similar TIC investment scheme in Case No. 2:20-cv-00004 in the United States District Court for the District of Utah.

114.    Plaintiffs allege that the Millcreek/Colliers Parties knew or should have known that Scott Rutherford was named as a defendant in two similar TIC investment schemes.

### MISREPRESENTATIONS AND OMISSIONS

**Misrepresentations and Omissions to All Plaintiffs**

115.    Long, Rutherford, Bell, Smith, Taylor, and McDougal made multiple representations to Plaintiffs, including by way of offering memoranda, property descriptions on Millcreek's website, and during discussions with the Plaintiffs.

116.    Thes Millcreek/Collier's representatives specifically represented to each Plaintiff that they had performed due diligence on the tenants for the TIC investments.

117.    The Millcreek/Collier's representatives represented to each Plaintiff with respect to the Millcreek Properties located in Keller, Texas and Draper, Utah, that they were to get fully

functioning surgery centers, and that the TIC investors had "tenants of their dreams," which was HSH.

118.    The Millcreek/Collier's representatives represented to each Plaintiff that the tenants for the Millcreek Properties were solid tenants.

## FIRST CAUSE OF ACTION
**(Violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 –
Against All Defendants)**

119.    By this reference, Plaintiffs incorporate all other allegations in this Complaint.

120.    Investment in the Millcreek Properties, coupled with guaranteed leases, was a security as defined in 15 U.S. Code § 77b (a)(1) in that it involved investment in a common enterprise with the success of the venture dependent primarily upon the efforts of others.

121.    Defendants made untrue statements of material fact and omitted material facts necessary to make the statements not misleading, as alleged above, in violation of Rule 10b-5.

122.    The material misrepresentations and omissions were made in connection with the offer to sell a security.

123.    Such material misrepresentations and omissions include, in addition to those previously alleged and incorporated herein:

a.    That the Millcreek/Collier Parties had conducted due diligence on the tenants for the Millcreek Properties;

b.    The risk analysis of the Millcreek Properties;

c.    The average capitalization rate over the lease term;

d.    That the tenants for the Millcreek Properties were "dream tenants;"

e.    That the guarantor was a solvent company;

f.    Concealing the initial purchase and one million dollar mark up of the property which occurred the same day as Goldsmith's closing;

g.  That the properties were backed by a Lloyd's of London- bond in place in case of tenant and guarantor default; and

h.  That Millcreek's TIC offerings did not constitute securities, and federal and state laws regulating the sale of securities did not apply.

124.  Defendants all made the material misrepresentations and omissions either through verbal or written correspondence with Plaintiffs or through their marketing materials.

125.  Defendants' material misrepresentation and omissions were made through the means or instruments of communication in interstate commerce or the mails— including telephone lines, the internet, email transmissions over the internet, and the United States Postal Service.

126.  Defendants acted knowingly in making material misrepresentations and omissions or should have known but acted with reckless disregard for their truth.

127.  Plaintiffs justifiably relied on the foregoing misrepresentations and omissions.

128.  Plaintiffs' substantial injury as a result of Defendants' misrepresentations and omissions in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Sale of Unregistered Securities - Against All Defendants)

129.  By this reference, Plaintiffs incorporate all other allegations in this Complaint.

130.  Investment in the Millcreek Properties was a security as defined in 15 U.S.C. §77b(a)(1) in that it involved investment in a common enterprise with the success of the venture dependent primarily upon the efforts of others.

131.  The TICs in the Millcreek Properties that are the subject of this Complaint were not registered by the filing of a registration statement, nor were they exempt from registration through a recognized exemption to registration under the 1933 Securities Act.

132.     During the time in which the Millcreek/Colliers Parties marketed the Millcreek Properties they made use of means or instruments of communication in interstate commerce or the mails—including telephone lines, the internet, email transmissions over the internet, and the United States Postal Service—for the purpose of offering, selling, and delivering interests in the Millcreek Properties, in violation of Sections 5(a) and 5(c) of the Securities Act (15 U.S.C. § 77e(a) and (c)).

133.     Pursuant to Section 12(a)(1) of the Securities Act (15 U.S.C § 77l (a)(1)), by reason of Defendants' violation, Defendants are liable to Plaintiffs in an amount equal to the consideration paid for such security with interest thereon, less the amount of any income received thereon upon tender of such security. For purposes of this Cause of Action only, Plaintiffs hereby tender their investment interest in the Millcreek Properties to Defendants upon receipt of the amount specified in this paragraph, as may be proven at trial.

134.     In the alternative, Plaintiffs are entitled to an award of damages in an amount to be proven at trial and all other applicable relief provided by law.

### THIRD CAUSE OF ACTION
**(Control Person Liability Under the Securities Exchange Act**
**Against Long, Taylor, Smith, McDougal, Bell, and Rutherford)**

135.     By this reference Plaintiffs incorporate all other allegations in this Complaint.

136.     Millcreek Commercial and Colliers International, named as Defendants in Plaintiffs' First and Second Causes of Action, are liable under Chapter 2B of Title 15 of the United States Code, the Securities Exchanges Act of 1934, and are referred to in this Cause of Action as the "Liable Persons."

137.     At all times relevant to this Complaint, the Defendants identified in this Third Cause of Action (Long, Taylor, Smith, McDougal, Bell, and Rutherford) controlled the Liable Persons, as follows:

    a.   Defendants were officers, directors, agents, or other control people of entities that are Liable Persons;

    b.   Defendants had authority over the Liable Persons as employers, supervisors, or persons with the ability to affect the terms of the Liable Person's employment or livelihood;

    c.   Defendants exercised actual control over the Liable Persons through authority, economic influence, contractual rights, or the use of dominant bargaining power or position;

    d.   Liable Persons willingly submitted to and complied with the instruction, direction, or authority of Defendants; and

    e.   Defendants participated in the business operations of the Liable Persons generally.

138.    Defendants had power over the specific transactions and activities at issue in this Complaint.

139.    With respect to their conduct and control of the Liable Persons relating to the matters addressed in the First Cause of Action, Defendants did not act in good faith, and the acts of Defendants did directly or indirectly induce the acts of the Liable Persons.

140.    Pursuant to Section 20(a) of the Securities Exchange Act (15 U.S.C. § 78t (a)), Defendants are jointly and severally liable with and to the same extent as the Liable Persons, and Plaintiff is therefore entitled to a Judgment against Defendants awarding damages in an amount to be proven at trial, but which is the equivalent of any award determined under any other applicable cause of action.

## FOURTH CAUSE OF ACTION
### (State Law Securities Fraud - Against All Defendants)

141.    By this reference, Plaintiffs incorporate all other allegations in this Complaint.

142.    The Plaintiffs' investment in the Millcreek Properties that are the subject of this Complaint is within the securities definition under applicable state law provisions.

143.    Under applicable provisions of state securities laws, Defendants were required to fully and fairly disclose all material facts that a reasonable investor would consider important in making investment decisions.  In connection with the Defendants' sale and the Plaintiffs' purchase of investments in the Millcreek Properties, Defendants made untrue statements of material fact; omitted to state material facts necessary to make the statements made, considering the circumstances under which they were made, not misleading; or otherwise engaged in conduct that worked fraud or deceit upon the Plaintiff in violation of applicable provisions of state law.

144.    The Defendants violated the applicable laws knowing they failed to make a full and fair disclosure to the Plaintiffs and with negligence and reckless indifference to what they knew or should have known.

145.    Plaintiffs did not know that Defendants' misrepresentations were false and were unaware of the material facts that Defendants omitted to disclose concerning their purchase of securities.

146.    By reason of Defendants' violations of applicable state statutes governing securities fraud, Plaintiffs are entitled to a judgment awarding the applicable statutory remedies, which may be measured by the total amount of Plaintiffs' investment plus interest at applicable rates, less the value of what Plaintiffs received from the investment, together with all other applicable relief provided by law.

147.    Plaintiffs are further entitled to a full recovery of pre- and post-judgment interest, costs of court, attorney's fees as provided in the applicable statutes, and such further relief as the Court may deem appropriate under the circumstances.

## FIFTH CAUSE OF ACTION
### (State Law Securities Violation/Sale by Unlicensed Broker or Investment Adviser - Against All Defendants)

148.    By this reference, Plaintiffs incorporate all other allegations in this Complaint.

149.    The investments in the Millcreek Properties that are the subject of this Complaint are within the definition of securities under applicable provisions of state law.

150.    Defendants functioned as securities agents in selling the investment in Millcreek Properties to the Plaintiffs.

151.    Defendants' conduct violates provisions of applicable state law which requires securities agents to be licensed.

152.    By reason of Defendants' unlicensed participation in the sale of securities to the Plaintiffs, Plaintiffs are entitled to a judgment awarding the applicable statutory remedies, which may be measured by the total amount of Plaintiffs' investment plus interest at applicable rates, less the value of what Plaintiff received from the investment, together with all other applicable relief provided by law.

153.    Plaintiffs are further entitled to a full recovery of pre- and post-judgment interest, costs of court, attorneys' fees as provided in the applicable statutes, and such further relief as the Court may deem appropriate under the circumstances.

## SIXTH CAUSE OF ACTION
### (Materially Aiding State-Law Securities Fraud - Against Long, Taylor, Smith, McDougal, Bell, and Rutherford)

154.    By this reference, Plaintiffs incorporate all other allegations in this Complaint.

155.    The Defendants identified in the Plaintiffs' Fourth and Fifth Causes of Action are liable to Plaintiffs under the applicable state statutes described above and are referred to in this Cause of Action as the "Liable Persons."

156.    At all times relevant to this Complaint, the Defendants identified in this Cause of Action materially aided the Liable Persons in violating the applicable state securities laws by conduct including but not limited to the following:

157.    Defendants were officers, directors, agents, or other control people of Liable Persons' entities and authorized, ratified, endorsed, or participated in the conduct constituting the violation.

158.    As part of their employment or business or commercial activity and in exchange for payment or other compensation, Defendants provided information, services, labor, or funds that significantly advanced the Liable Persons' unlawful conduct or purposes with respect to Plaintiff.

159.    Defendants otherwise engaged in conduct materially aiding the Liable Persons in accomplishing the unlawful sale of securities to Plaintiffs.

160.    Defendants did not act in good faith, and Defendants knew or recklessly disregarded the facts in carrying out their conduct relating to the sale of securities to Defendants.

161.    Pursuant to applicable state law relating to those who materially aid securities violations, Defendants are jointly and severally liable with and to the same extent as the Liable Persons, and Plaintiffs are therefore entitled to a Judgment against Defendants awarding damages in an amount to be proven at trial, but which is the equivalent of any award determined under Plaintiffs' Fourth and Fifth Causes of Action, together with all other applicable relief provided by law.

162.    Plaintiffs are further entitled to a full recovery of pre- and post-judgment interest, costs of court, attorney's fees under contract or at law, and such further relief as the Court may deem appropriate under the circumstances.

### SEVENTH CAUSE OF ACTION
**(Common Law Fraud - Against All Defendants)**

163.    By this reference, Plaintiffs incorporate all other allegations in this Complaint.

164.    Defendants made false statements about vital facts regarding the Millcreek Properties, including the representations within the marketing materials and the representations made to each of the named Plaintiffs that (1) due diligence was performed on the tenants for the properties, (2) that the rents would be paid by the tenants even where, in the instance of the property in Keller, Texas, the tenant was not yet occupying the space, and (3) that the tenants agreed to pay rent.

165.    Defendants made the statements knowing that they were false.  Defendants, including Street, knew that the tenants were sham companies and that the tenants did not have the ability to pay rent.  Therefore, to conceal this from Plaintiffs, Defendants caused a combination of Millrock, Millcreek, and Advanced American Development Partners to pay rents at the various properties – with investors' money.

166.    Millcreek omitted to disclose to the Plaintiffs that the tenant HSH was late to pay rent as early as December 2021, and instead covered the rents for the tenant.

167.    Alternatively, Defendants made the statements recklessly and without regard for their truth.

168.    Defendants intended that Plaintiffs would rely on the statements and Plaintiffs did, in fact, rely on the false statements and omissions in entering into transactions to purchase TIC shares in the Millcreek Properties.

169.    Plaintiffs reasonably relied on the statements by investing in the TIC shares in the Millcreek Properties.

170.    As a result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

171.    Because Defendants' conduct was intentional, knowing, reckless, and malicious, and in disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive or exemplary damages in an amount to be determined by the trier of fact.

## EIGHTH CAUSE OF ACTION
### (Negligent Misrepresentation - Against All Defendants)

172.    By this reference, Plaintiffs incorporate all other allegations in this Complaint.

173.    Defendants had a duty to determine and disclose fully and fairly all facts that materially affected or related to the condition of the Millcreek Properties, the viability of the investment, and the legitimacy of the tenant and corporate guarantor.

174.    Defendants made false representations to Plaintiffs as detailed above.

175.    Defendants owed a duty of reasonable care to Plaintiffs independent of any contractual obligation.

176.    Defendants knew such representations were false or were negligent in making such representations.

177.    Defendants were negligent in investigating the tenant and the corporate guarantor.

178.    Defendants knew or should have known the misrepresentations were false.

179.    The Defendants made the misrepresentations to induce Plaintiffs into purchasing the shares of the Millcreek Properties for a grossly inflated price.

180.    The foregoing misrepresentations and omissions were not only material, but the information was critical to Plaintiffs' evaluation of whether to purchase the TIC shares of the Millcreek Properties.

181.    Plaintiffs would not have invested in the Millcreek Properties had they known the true facts.

182.    Plaintiffs justifiably relied on the foregoing misrepresentations.

183.    As a result of Defendants' negligence, Plaintiffs have been damaged in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty - Against All Defendants)**

184.    By this reference, Plaintiffs incorporate all other allegations in this Complaint.

185.    Defendants had or held themselves out as having superior skill, knowledge, training, and experience concerning all aspects of the transactions by which Plaintiffs invested in the TIC shares of the Millcreek Properties.

186.    Defendants expected that Plaintiffs would put trust and confidence in Defendants and affirmatively invited and encouraged Plaintiff to rely on their judgment and skill regarding their TIC investments in the Millcreek Properties.

187.    The TIC investment structure and IRS rules made Plaintiffs the weaker party, with unique vulnerabilities, including, inter alia, Plaintiffs' ages, experience, abilities, and disabilities.

188.    The Plaintiffs' unique vulnerabilities put them in an unequal bargaining position with Defendants.

189.    Defendants owed Plaintiffs fiduciary duties of honesty, loyalty, care, and a duty to use their special skills for Plaintiffs' benefit.

190.     Plaintiffs reposed absolute trust and confidence in Defendants to advise, counsel, and protect Plaintiffs.

191.     Defendants accepted trust and confidence from Plaintiffs.

192.     Plaintiffs depended on Defendants to do their due diligence into the legitimacy of the tenant and guarantor.

193.     Defendants also had access to superior and exclusive knowledge about the Millcreek Properties investment opportunity, such as information about the financial performance of the tenants, including HSH and their affiliate entities, and the flow of funds to and from those entities.

194.     Defendants breached their fiduciary duties to Plaintiffs by, inter alia, failing to investigate the legitimacy of the tenant and guarantor or concealing their knowledge regarding the same and by making the materially false or misleading representations or omissions alleged above.

195.     Defendants' breach of fiduciary duties directly and proximately caused injury and damages to Plaintiffs.

196.     As a result of the Defendants' conduct, the Plaintiffs have been damaged in an amount to be proven at trial.

197.     Because Defendants' conduct was intentional, knowing, reckless, and malicious, and in disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive or exemplary damages in an amount to be determined by the trier of fact.

## **TENTH CAUSE OF ACTION**
### **(Unjust Enrichment of Defendants – Against All Defendants)**

198.     By this reference, Plaintiffs incorporate all of his allegations in this Complaint.

199.     Plaintiffs conferred a benefit on the Defendants by making investments in the Millcreek Properties, including having Street serve as the property manager.

200.    Defendants each received a benefit from Plaintiffs in the form of commissions or other compensation paid from the proceeds of the sale transaction; access to and direct use of the identifiable proceeds of the investment; and perpetuation of the overall scheme.

201.    Defendants knowingly benefitted from the proceeds of the Millcreek Properties' transactions and diverted invested money to purposes not benefiting Plaintiffs.

202.    Under the circumstances, equity and justice demand that Defendants not be permitted to retain the benefits conferred upon them by Plaintiffs without compensating Plaintiffs.

203.    By reason of Defendants' unjust enrichment, Plaintiffs are entitled to a judgment awarding an amount to be determined at trial, but which may be measured by the total amount of benefit that Plaintiffs have conferred upon Defendants, together with all other applicable relief at law or in equity, including but not limited to a constructive trust requiring to hold funds for Plaintiff's benefit and return them as ordered by the Court.

204.    Plaintiffs are further entitled to a full recovery of pre- and post-judgment interest, costs of court, attorney's fees under contract or by law, and such further relief as the Court may deem appropriate under the circumstances.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs request relief as follows:

A.    An award of actual damage and punitive or exemplary damages, attorney's fees, and costs in an amount to be proven at trial, plus any applicable interest.

B.    Pre-judgment interest, attorney fees, and costs of suit to the extent allowed by applicable law.

C.    If for any reason the 1031 exchanges are deemed to be invalid, for all taxes, interest, fines, and fees caused by Defendants' malfeasance.

D.    Such other relief as may be just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable in this case.


DATED: this 22nd day of August 2024.


        PIA HOYT, LLC


        */s/ Wesley D. Felix*
        *Attorney for Plaintiffs*