Wesley D. Felix (#6539)
NELSON CHRISTENSEN
HOLLINGWORTH & WILLIAMS
68 South Main Street, Suite 600
Salt Lake City, UT 84101
T. (801) 531-8400
wes@nchwlaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROGER WILSON, an individual; RAYMOND BOMBEN, an individual; OWENA BOMBEN, an individual; JOHN BOSSHARD, an individual; SOPHANARITH CHEA, an individual; ROBERT MICHAEL SAYERS, an individual; SHERMAN FREEZE, an individual; SANDRA FREEZE, an individual; CASSANDRA FREEZE, an individual, LUCY A. GROETSCH, an individual; WILFRED SINDON, and CRAIG MARSDEN, an individual,<br><br>        Plaintiffs,<br>vs.<br><br>MILLCREEK COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; COLLIERS INTERNATIONAL, a business operating in Utah under a dba; EQUITY SUMMIT GROUP P.C., a Utah corporation; BRENT SMITH, an individual; KEVIN G. LONG, an individual; ANDREW BELL, an individual; SCOTT RUTHERFORD, an individual; MARK MACHLIS, an individual; GREEN IVY REALTY, INC., a Utah corporation; and DOES 1-10, individuals or entities. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS MARK MACHLIS AND GREEN IVY REALTY, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br><br>CASE No. 2:24-cv-00624-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

Plaintiffs Roger Wilson, Raymond Bomben, Owena Bomben, John Bosshard, Sophanarith Chea, Robert Michael Sayers, Sherman Freeze, Sandra Freeze, Cassandra Freeze, Lucy A. Groetsch, Wilfred Sindon, and Craig Marsden (collectively "Plaintiffs"), through their counsel and pursuant to Local Rule 7-1 DUCivR and Fed. R. Civ. P. 12(b), submit this memorandum in opposition to Defendants Mark Machlis' ("Machlis"), Millcreek Commercial Properties, LLC ("Millcreek"), and Green Ivy Realty, Inc.'s ("Green Ivy") Motion to Dismiss Second Amended Complaint [Dkt 105] ("Motion"). The Second Amended Complaint [Dkt 100] shall be referred to as the "Complaint".

## I. INTRODUCTION

Mark Machlis worked alongside Colliers International's ("Colliers") agents Kevin Long, Brent Smith and Scott Rutherford selling tenant-in-common interests in property at values vastly inflated above the purchase price. The inflated prices, sometimes four or five times what the Millcreek/Colliers defendants paid, were justified by reference to purported rents from sham tenants who signed leases that all defendants knew would never be honored. Machlis did not disclose that he was compensated as a "development partner" for Millcreek, giving him a substantial financial incentive to push plaintiffs into the Ponzi Scheme transactions. Indeed, most of the fees, kickbacks and commissions paid to the sellers were never disclosed to the plaintiffs. Contrary to what investors were told, the bulk of the money they invested was used to pay off conspirators and to pay the sham rents defendants used to prop up the appearance of a legitimate transaction until, like all Ponzi Schemes, it inevitably collapsed.

Machlis argues that the Complaint does not adequately specify his role in the fraud. This claim is premised on the assertion that the Complaint typically refers to misrepresentations made by all the individual defendants, or to misrepresentations made in the documents disseminated by

Millcreek. But the Complaint is replete with specific misrepresentations made by Machlis to the plaintiffs. As alleged in the Complaint, Machlis made all the principal misrepresentations or omitted to disclose material facts that would have dissuaded plaintiffs from investing. All these misrepresentations occurred during the roughly one-year period during which plaintiffs were swindled. These facts have been adequately plead.

## II. LEGAL STANDARD

When deciding a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court "accept[s] as true all well-pleaded factual allegations … and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562. "Rather, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Motions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559.

## II. ARGUMENT

### A. Plaintiffs Have Plead Fraud with the Requisite Particularity.

Defendants Machlis and Green Ivy argue that Plaintiffs have failed to identify "***any***" untrue or misleading statements that were made by Machlis or Green Ivy which include the "who, what, when, where, and how of the alleged fraud" and describe "the time, place, and contents of the false representation, the identity of the party making the false statements and the

consequences thereof." *See* Motion [Dkt 105]. This is demonstrably false. Paragraph 123 of the Complaint, for example, states:

> On October 19th of 2021 Mark Machlis emailed John Bosshard and stated that "HSH started to pay rent" for the Keller facility. This was a lie. HSH never paid rent for the Keller facility.

This paragraph of the Complaint is accompanied by an image of the email Machlis sent, using his Green Ivy Realty email, to John Bosshard. It shows who sent it, what was stated, and when it was stated down to the exact minute. As is stated at numerous points in the Complaint, this misrepresentation and many others made by Machlis and Green Ivy were relied upon by Plaintiffs such as Bosshard when they were induced to purchase the TIC interests bundled with the sham long-term lease agreements.

Machlis and Green Ivy argue that Plaintiffs do not explain the relationship between Machlis and other defendants other than to vaguely say that Machlis is a "development partner" of Millrock Investment Fund 1, LLC ("Millrock"). *See* Motion [Dkt 105]. But it is not the fault of the Plaintiffs that Machlis' relationship with other defendants was ill-defined. In fact, this vague relationship was likely intentionally ill-defined in order to obfuscate the ongoing fraudulent scheme. Regardless, the title itself is irrelevant given that Plaintiffs have outlined the exact practical business structure between Machlis and the other defendants, who would pay him kickbacks in exchange for inducing new people to invest in the fraud. Even at the pleading stage it is incontrovertible that Machlis and Green Ivy have a very close relationship with both Millrock and Millcreek given the evidence that Plaintiffs have already provided in the Complaint. *See* Complaint, paragraphs 42-44 [Dkt 100].

Even if Machlis and Green Ivy were correct in their argument that Plaintiffs have not identified the misrepresentations with requisite particularity, their argument would still be

insufficient to prove that Plaintiffs have inadequately plead securities fraud since the gravamen of the fraud allegations against Machlis and Green Ivy is that Machlis and Green Ivy omitted material facts necessary to make their statements not misleading – namely that "Machlis worked as an undisclosed agent of Colliers receiving kickbacks and fees for the investors he sold to or referred." *See* paragraph 41 of the Complaint [Dkt 100]. Plaintiffs of course cannot state exactly when such an omission was made by Machlis and Green Ivy.

As Judge Campbell observed in the related Rockwell fraud case, omissions which can serve as the sole basis for both securities fraud and common law fraud claims cannot be provided with a specific place and time. "[I]t is unclear how Plaintiffs could have been more specific; because they are alleging that each Defendant failed to make certain disclosures [and] there is no practical way for Plaintiffs to detail the date or place of conversations that never occurred." *DiTucci v. Ashby*, 2019 U.S. Dist. LEXIS 106144 *13, (D. Utah June 24, 2019). Moreover, when "a claim sounding in fraud contains a hybrid of allegations, some of which satisfy the strictures of Rule 9(b) and some of which do not, an inquiring court may sustain the claim on the basis of those specific allegations that are properly pleaded." *Homes Dev. Corp. v. Edmund & Wheller*, Inc., 2022 U.S. Dist. LEXIS 176825, *22 (D. N.H. September 29, 2022). *See also SEC v. Gann*, 565 F.3d 932, 937 (5th Cir. 2009) (A statement or omission is material if it is reasonably calculated to influence the decisions of an investor.).

### B. Machlis and Green Ivy Acted with Scienter.

Machlis and Green Ivy argue that Plaintiffs have not alleged that Machlis and Green Ivy acted with the requisite scienter. Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). A plaintiff must allege facts which provide a basis to believe that defendant knew or was reckless in not knowing

"that a statement was materially false or misleading" *North American Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).

As Plaintiffs state in the Complaint, "Machlis represented to John Bosshard, and other Plaintiffs in 2021 and 2022 that he had done full due diligence on the Keller property and its putative tenants. He stated that the tenant was an operating entity, that the facility was fully completed and that rents were currently being paid by the tenant. These representation were false." *See* Complaint, paragraph 120 [Dkt 100].

Given such misrepresentation and others like it, that Machlis had the most basic understanding of the actions he himself performed is all that must be assumed in order to prove Machlis acted with scienter. If Machlis wants to argue that he did not know that he himself failed to perform due diligence as to the tenants then Machlis should argue for reckless incompetency instead. The fact is that Machlis knew that he had performed no due diligence in connection with any of the TIC investments he was selling as a development partner with Millcreek, or else he knew that he had done his due diligence and simply lied to Plaintiffs by calling the tenants stable "dream tenants" instead of what they were – defunct shell entities. As stated in Plaintiffs' Complaint, Machlis' goal was to "[steer] investors to Millcreek in exchange for commissions or kickback fees of up to 6%." *See* Complaint, paragraph 68 [Dkt 100]. This clearly constitutes intent to deceive, manipulate, or defraud, or at the least it was grossly reckless. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 325 (2007) (personal financial gain may weigh heavily in favor of a scienter inference.).

### C.  State Law Securities Fraud and State Law Securities Violation.

Machlis and Green Ivy argue that TIC interests are expressly exempt from consideration as securities under the Utah Uniform Securities Act and that therefore Plaintiffs' state law

5

securities fraud and state law securities violation claims fail. The Utah Uniform Securities Act does exclude "undivided fractionalized long-term estate in real property".[1] *See Utah Code Ann. § 61-1-13(1)(ee)(ii).*

First, Plaintiffs argue that, although Utah law excludes mere TICs from inclusion as "securities", the bundling of a TIC interest with a long-term triple-net lease agreement is a different investment which constitutes an investment contract, which is explicitly considered a security under the Utah Uniform Securities Act. *See Utah Code Ann. § 61-1-13(1)(ee)(i)(k)*. The code not only states that investment contracts are securities, but it also states that the term investment contract includes "an investment in a common enterprise with the expectation of profit to be derived through the essential managerial efforts of someone other than the investor". *See Utah Code Ann. § 61-1-13(1)(s)(i)*. Indeed, as is alleged in the Second Amended Complaint, Machlis promised Plaintiffs that the investment would be completely passive with no need for investors to have any management responsibility because of the included long-term triple-net lease. *See* Complaint, paragraph 85 [Dkt 100]. The investment as it was sold to Plaintiffs is a security and remains so whether or not smaller portions of the investment bundle are exempt by themselves.

Second, Plaintiffs state law-based claims cannot be dismissed based solely on Utah law. Plaintiffs were solicited while residents of several states including Washington, California, Alaska and Idaho. Each of these states has securities laws that substantively differ from Utah's. They do not exempt TIC transactions in their Blue Sky laws and viable state securities law claims can be made in each of these jurisdictions.

---

[1] Certain undivided fractionalized long-term estate in real property is included in the definition of a security if there are more than 10 owners and the management agreement does not meet certain qualifications.

### D. Plaintiffs Allege Facts Sufficient to Support their Negligence and Breach of Fiduciary Duty Claims.

Machlis and Green Ivy argue that Plaintiffs have alleged no facts which would create a fiduciary duty between themselves and Plaintiffs. Machlis acting through Green Ivy as either a real estate agent or a seller engaged in the sale of securities has an affirmative duty to disclose material information to a potential purchaser. A seller's agent owes the seller the fiduciary duty of full disclosure, which obligates the agent to tell the seller all material information which the agent learns about the buyer or about the transaction. Utah Admin. Code R. 162-6-2.15.1(c). Disclosure is required under Rule 10(b) when necessary to make statements made, in the light of the circumstances in which they were made, not misleading. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). Under the circumstances here, Plaintiffs have more than adequately plead facts supporting a duty to disclose.

Defendants also argue that Machis had no fiduciary duty because he did not act as a real estate agent. But the fact that Machlis was a licensed professional real estate agent, and that he was paid at least a 6% fee by Millcreek on each transaction create questions of fact as to what role and in what capacity he lured Plaintiffs into the fraudulent transactions. In this circumstance, where Machlis failed to enter into any agency agreements, plausibly because he wanted to conceal his financial interest in the fraudulent transaction, Plaintiffs should be permitted to conduct discovery as to Machlis' actual role, or, at a minimum, the breach of fiduciary duty claim should be dismissed without prejudice with leave for Plaintiffs to amend when it can be determined for whom Machlis was actually working and in what capacity.

### E. Plaintiffs Have Adequately Plead Unjust Enrichment.

Defendants' new argument against unjust enrichment is that the Plaintiffs' claim should be dismissed since it would apparently be equitable for Machlis and Green Ivy to receive a 6% kickback fee from Millcreek in exchange for steering Plaintiffs to invest in the fraudulent scheme. This is beyond unreasonable and there is no law or case law to back it up. Machlis acted as Plaintiffs' real estate agent and state law prohibits real estate agents from accepting consideration from anyone other than their client. *Utah Code Ann*. 61-2f-305. *Utah Code Ann*. 61-2f-401 (2). Any kickback received by Machlis and Green Ivy for steering Plaintiffs to invest in the Millcreek scheme is inequitable.

Machlis cannot escape this by arguing that he was not an agent for Plaintiffs or for Defendants and that somehow, he was a free agent with no fiduciary duties to anyone. Notwithstanding such a ludicrous evasion of responsibility, for whom Machlis did or did not act as an agent for is a question of material fact to be determined at a later stage and thus cannot be grounds for a motion to dismiss.

### F. Green Ivy is Vicariously Liable for the Acts of its Agent Machlis.

A corporation acts only through individuals. The corporation is generally liable for acts by its agents committed within the agency relationship even when those acts are fraudulent. "[W]hen a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). *See also* Restatement (Third) of Agency § 7.07 cmt. d (Am. Law Inst. 2006) ("[W]hen an employee's job duties include making statements to prospective customers to induce them to buy from the employer, intentional misrepresentations made by the employee are

within the scope of employment unless circumstances establish that the employee has departed from it.").

Courts that have considered the issue in the context of the sale of insurance products have routinely held insurance companies vicariously liable for the fraudulent misrepresentations made by their agents. *See, e.g., Weyand v. Union Central Life Ins. Co.*, No. 30-2013-00633423, 2016 Cal. App. Unpub. LEXIS 1422, 2016 WL 750433, at *7 (Cal. Ct. App. Feb. 26, 2016); *Pan-American Life Ins. Co. v. Roethke*, 30 S.W.3d 128, 132-33 (Ky. 2000); Chicago Title Ins. Co. v. Washington State Office of Ins. Comm'r, 178 Wn.2d 120, 309 P.3d 372, 381-83 (Wash. 2013). See also Cook v. John Hancock Life Ins. Co., No. 7:12-cv-00455, 2015 U.S. Dist. LEXIS 4318, 2015 WL 178108, at *9 (W.D. Va. Jan. 14, 2015) (denying a motion to dismiss because the misrepresentations about a life insurance policy "were arguably within the scope of [the agent's] actual or apparent authority").

## IV. CONCLUSION

For the above reasons, Defendants Mark Machlis' and Green Ivy Realty's Motion should be denied.

DATED this 21st day of May, 2025.

NELSON CHRISTENSEN
HOLLINGWORTH & WILLIAMS

/s/ Wes Felix
Wesley D. Felix
*Attorney for Plaintiffs*
